780 So.2d 194 (2001)
Stephen HREZO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-4461.
District Court of Appeal of Florida, Second District.
January 31, 2001.
Lawrence D. Shearer of McDonald & Shearer, P.A., Lakeland, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jennifer R. Haymes, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Stephen Hrezo appeals his judgments and sentences for possession of cocaine and possession of drug paraphernalia, which the trial court imposed after Mr. Hrezo pleaded no contest, specifically reserving his right to appeal the denial of his motion to suppress the evidence. We reverse because the deputy sheriff's use of his emergency and takedown lights to check a legally parked car resulted in an unauthorized investigatory stop.
On the evening of June 18, 1998, Mr. Hrezo was alone in his vehicle, parked at Lake Cannon Park in Winter Haven, a *195 public park that has no posted hours of operation. At approximately 9 p.m., a Polk County sheriffs deputy parked his patrol car behind Mr. Hrezo's vehicle. The deputy testified that Mr. Hrezo's car was parked in an alternate boat ramp in a wooded area away from the main parking area where there were no other people or vehicles. The deputy testified that he intended to make a citizen contact to find out who was in the vehicle and why they were there, and "probably" to tell them that it was dusk and time to leave the park. There is no suggestion that the officer had a reasonable suspicion of any criminal activity or even a traffic infraction at the time he made this decision.
Before approaching Mr. Hrezo's vehicle on foot, the deputy turned on his patrol car's emergency lights and takedown lights. He explained that he turned on these lights for his own safety and so he could see inside the vehicle. When he approached the car, the deputy requested identification and Mr. Hrezo produced identification. During this process, the deputy shined his flashlight into the car's interior and saw the end of a clear glass tube protruding from numerous papers on the console between the two front seats. He testified he immediately recognized the tube as a glass narcotics pipe.
The deputy ordered Mr. Hrezo out of his vehicle, handcuffed him, and arrested him for possession of drug paraphernalia. A subsequent search of Mr. Hrezo and his car produced additional cocaine and paraphernalia.
After a hearing on Mr. Hrezo's motion to suppress the evidence, the trial court entered a written order denying the motion to suppress. The court ruled that the initial encounter was a consensual policecitizen encounter and that when the deputy inadvertently saw the crack cocaine pipe in plain view and recognized it as drug paraphernalia, he had probable cause to arrest Mr. Hrezo.
Although we readily understand the officer's decision to turn on his takedown lights for personal safety, we must hold that the contact with Mr. Hrezo was a stop and not a consensual encounter. A consensual encounter is transformed into an investigatory stop if a reasonable person would not feel free to leave. See Popple v. State, 626 So.2d 185, 187-88 (Fla. 1993). When a police officer turns on his or her emergency and takedown lights under these circumstances, a reasonable person would expect to be stopped, at a minimum, for a traffic infraction and perhaps for the crime of fleeing and eluding if he or she drove away. See § 316.126, Fla. Stat. (1999); State v. McCune, 772 So.2d 596 (Fla. 5th DCA 2000). Accordingly, the use of such lights is typically regarded as an act that initiates an investigatory stop. See Brooks v. State, 745 So.2d 1113, 1113-14 (Fla. 1st DCA 1999).[1]
We emphasize that an officer's use of a spotlight is not the same as the use of emergency lights. See State v. Wimbush, 668 So.2d 280 (Fla. 2d DCA 1996) (reversing suppression where officers pulled alongside parked car and illuminated interior *196 of car with a spotlight, seeing cocaine on driver's and passenger's faces; initial encounter held consensual, not stop). Likewise, we do not decide today whether a consensual encounter ends when an officer turns emergency lights on for a second or two at night to signal a citizen that the approaching person is a police officer and not a robber. Cf. State v. Baldonado, 115 N.M. 106, 847 P.2d 751, 755 (Ct.App.1992) (holding manner in which officers approach a car after activating emergency lights determines whether stop is "seizure" requiring reasonable suspicion; trial courts should find stop if manner was accusatory, but no stop if manner was deferential and officers ask if occupants need help). Finally, we do not decide today whether an officer who has initiated a consensual encounter may turn on his emergency lights for reasons of traffic safety during the consensual encounter.
In this case, there is no dispute that the deputy lacked a well-founded suspicion that Mr. Hrezo had committed or was about to commit a crime when he turned on his emergency lights. See Danielewicz v. State, 730 So.2d 363 (Fla. 2d DCA 1999) (holding investigative stop, based on officer's observation of defendant apparently asleep in legally parked car, was improper). The cocaine and drug paraphernalia that the police found in Mr. Hrezo's car were the fruit of an unlawful stop. Therefore we reverse Mr. Hrezo's judgments and sentences because the trial court should have granted the dispositive motion to suppress.
Reversed and remanded.
PARKER, A.C.J., and SALCINES, J., concur.
NOTES
[1] See also State v. Donahue, 251 Conn. 636, 742 A.2d 775, 780 (1999) (holding defendant was "seized" at moment officers pulled up behind parked vehicle and switched on flashing lights); Hammons v. State, 327 Ark. 520, 940 S.W.2d 424, 428 (1997) (holding police turning on blue light showed display of authority such that reasonable person would not feel free to leave); State v. Burgess, 163 Vt. 259, 657 A.2d 202 (1995) (holding police display of blue lights after pulling behind stopped vehicle constituted a stop); State v. Gonzalez, 2000 WL 1207186 at *5 (Tenn. Crim.App. Aug.10, 2000) (holding flashing police lights convey message that car occupants not free to leave); Wallace v. Commonwealth, 32 Va.App. 497, 528 S.E.2d 739, 741 (2000); State v. Mireles, 133 Idaho 690, 991 P.2d 878, 880 (Ct.App.1999); State v. Walp, 65 Or.App. 781, 672 P.2d 374, 375 (1983) (holding use of overhead lights was sufficient show of police authority that reasonable person would not feel free to leave); State v. Stroud, 30 Wash. App. 392, 634 P.2d 316, 318 (1981) (holding defendant "seized" at moment officers pulled up behind parked vehicle and switched on flashing lights).